13-15179 Stanley Thompson v. United States Mr. Chaykin. Good morning your honors and may it please the court. David Chaykin from the Troutman Sanders Law Firm. It is, I am honored to have been appointed by the court to represent Mr. Thompson in this case along with my colleagues from Troutman Sanders. At the outset I'd like to bring two issues to the court's attention. First, Mr. Thompson's conviction should be reversed because in the opening moments of Mr. Thompson's trial, his own lawyer, against Mr. Thompson's wishes and without his consent, told the jury in his opening statement that Mr. Thompson participated in the Taco Bell robbery identified as the lead charge in the indictment in violation of Mr. Thompson's Sixth Amendment rights. Let me ask you a question about, I know there was no evidentiary hearing held in the district court on the 2255 motion, but what was Mr. Thompson's evidence, his testimony, his words about how that exchange between himself and his lawyer took place? Did he say anything about whether that was a pre-trial discussion when they discussed strategy or that was something that he told them as things were happening or going forward? Was he specific about when that exchange occurred? In his sworn statement in his 2255 petition, Your Honor, Mr. Thompson stated that his lawyer at trial proposed this to him, this concession of guilt, that it was against Mr. Thompson's wishes and that it happened at trial. In a reply brief filed pro se by Mr. Thompson prior to me being appointed to represent him, he elaborated and said that his counsel surprised him with this at trial, at the beginning of trial, and that he specifically told his counsel he did not wish to plea or admit to anything. This unauthorized- Is this the McCoy issue that you're talking about? Pardon me, Your Honor? Is this the McCoy issue? Yes, Your Honor. Okay. Was that part of the Certificate of Appealability? The facts that give rise to his arguments under McCoy, our position is that those are in the Certificate of Appealability, and so the court can consider them as part of this case. Your contention is that he was granted a Certificate of Appealability on whether or not his lawyer rendered ineffective assistance by conceding guilt on the Taco Bell robbery, and what McCoy does is just make your argument stronger. Well, yes and no, Your Honor. We believe that what it does is it gives us two arguments for the court to reverse pursuant to this concession of guilt. The first is McCoy, which our position is that this unauthorized concession by Mr. Thompson's counsel violated Mr. Thompson's Sixth Amendment secured autonomy to control his defense, which is a structural error and requires vacating his convictions under McCoy. But also, this unauthorized concession, because it violated well-settled rules that gave Mr. Thompson the right to control his defense, and because it was based on Mr. Thompson's lawyer's ignorance on a fundamental point of law, and that is the minimal showing necessary to prove the interference with interstate commerce element of a Hobsock robbery, particularly of a national restaurant chain like Taco Bell, gives rise to a Strickland claim and establishes a Strickland claim in this case. Did McCoy come down after this case was all over? Yes, Your Honor. Mr. Thompson was convicted in 2008. His 2255 petition was filed in 2011. The briefing in this court on Mr. Thompson's pro se claims and his COA, I believe, was 2014, and McCoy was decided in May 2018. So we're saying McCoy's not applicable? McCoy is applicable, but we think McCoy strengthens what he originally asserted, which is that his counsel's concession of guilt violated his Sixth Amendment rights. We think that that has always been the law and that this is a reasonable or logical application of Paretta and the line of cases along those lines that give the defendant in a criminal trial the right to control his defense. The second issue I wanted to bring to Your Honor's attention at the outset. Before you move on to the second issue, if the McCoy matter is within the Certificate of Appealability, do we have to make a determination about McCoy's retroactivity? No, Your Honor, because McCoy is not a new rule, so it doesn't need to be determined to be retroactive to apply here. Well, part of it seems to be, part of it doesn't seem to be. I mean, it holds that part of it seemed to me to be partly new, and that is the portion that says that if a defendant tells his or her lawyer, I do not want to concede guilt, that as long as the lawyer is not suborning perjury, he or she cannot concede guilt. And the holding of McCoy in that regard is that to the extent that it deprives a defendant of the right to control his or her own defense, that error is structural. That's new, right? Well, Your Honor, our position is that McCoy was a logical extension of prior precedent. It doesn't, that's not creating a new rule, and at least one court, the Ninth Circuit in the United States, Reed, apparently has recognized recently that McCoy affirmed a defendant's autonomy to determine the objectives of his defense, a right the Supreme Court recognized in Feretta. So we think this has been the law for 200 years. It's just an extension of prior precedent. And it's not new, and the court does not have to make a retroactivity determination. The second issue I wanted to bring to Your Honor's attention at the outset is that the convictions should also be reversed because Mr. Thompson's trial counsel was constitutionally ineffective for failing to move to sever Mr. Thompson's trial from that of his co-defendant, Leary Robinson, at any point before or during Mr. Thompson's trial. This was a catastrophic error that led to the improper and highly prejudicial use of Robinson's post-conspiracy, blame-shifting statements to law enforcement as substantive evidence against Mr. Thompson at trial. How did those come into, did Mr. Robinson testify at trial? Mr. Robinson testified at trial, and what the government did is that it purported to use these statements that Mr. Robinson had made to law enforcement implicating Mr. Thompson as impeachment of Mr. Robinson. It then convinced the district court to modify the proper confessing co-defendant instruction that prohibits use of that impeachment evidence as substantive evidence of Thompson's guilt and had the district court erroneously order the opposite and also argued to Mr. Thompson's jury that it was evidence that Mr. Thompson was involved in all of these other robberies for which there was little or no actual direct evidence. I haven't gone into the trial transcripts, so this is why I'm asking this question. Mr. Robinson's testimony was favorable to Mr. Thompson? That's why the government sought to impeach him? Mr. Robinson's testimony, Mr. Robinson refused to answer the question as to whether he had implicated Mr. Thompson or whether Mr. Thompson was involved. And so, in that respect, I understand he refused to answer that question. That's correct. And this, keep in mind, this was, the parties were alerted to this, that this was going to happen before it happened. And it was no surprise to Mr. Thompson's counsel, yet he did nothing, it appears in the record, he did nothing to figure out what the law was on this, have a plan to deal with it. Your client was not hurt by Mr. Robinson's testimony then, he didn't incriminate him, right? He was because the government, when Mr. Robinson refused to implicate Mr. Thompson or refused to acknowledge these statements, the government walked through these statements one by one in devastating to devastating impact. You told law enforcement that Mr. Thompson did the robberies with you. You told law enforcement that Mr. Thompson was your getter in succession along those lines. What about the district court's argument that the authorities could have tried Robinson first and then had the exact same substantive testimony in Mr. Thompson's trial? Your Honor, that is prosecutor lore. I have never seen that happen. The government has cited no case, no example of that ever happening. I have heard of that, I've seen that argument, I just think it's completely speculative and I don't think the court should credit that argument and I don't think the district court should have. The last thing I want to say, well, on the second issue, this devastating use of evidence that was solely for impeachment purposes as substantive evidence of Mr. Thompson's guilt undoubtedly prejudiced Mr. Thompson because it essentially allowed the government to use this evidence to bolster Mr. Thompson's, bolster the otherwise very weak and circumstantial evidence of Mr. Thompson's involvement in any of the federal bank robberies. What's your best case to show that severance should have been granted in this case? Your Honor, there's no case directly on point, but I think the closest is Nelson v. O'Neill. It's cited in our papers and it's a United States Supreme Court case in which the co-defendant testified at a federal trial, denied that he had implicated the defendant who's complaining about this, and the government then used the evidence for impeachment purposes and the Supreme Court specifically said that that evidence is supposed to be limited or there's supposed to be a cautionary instruction to the jury that that cannot be used as substantive evidence of the non-testifying defendant's guilt. That was not a severance issue in the case, right? That's correct, Your Honor, but we believe that would have created the compelling prejudice necessary for a severance. And as this problem unfolded at trial, it became more and more obvious, and if the court looks through the transcript, it will see that at every stage, the defense lawyer failed to take any action to try to fix this or to try to get a severance or a mistrial or anything. Defense counsel should have made the motion to sever in the middle of the trial, not pre-trial. Under rule, that's correct, Your Honor. Well, we submit that the defense counsel should have done it before trial, and had the defense counsel done it before trial, the parties, the court, everyone would have been more educated about these issues and what happened likely would never have happened. But under Rule 14 and the Joinder cases, the court can sever the trial at any point during a trial. Sure, but those motions, pre-trial are rarely ever granted, aren't they? And I agree, Your Honor, but in this instance, it became very obvious during the trial that a severance was necessary, and the defense attorney failed to seek it. He also failed to notify the court or file a post-trial motion for new trial based on the reversible error that had occurred with respect to the jury instruction. And even minimal research, it's not hard to find a U.S. Supreme Court case on point, even if that was a reversible error with respect to the way that the court instructed the jury on how it could use that impeachment evidence against Mr. Thompson. Thank you very much. You saved your time for rebuttal. Thank you. Ms. Dutcher. Good morning, Your Honors, and may it please the court, Irina Dutcher on behalf of the United States. This court should deny the appellant's McCoy claim or strike it as beyond the certificate of appealability and should decide the issue of the trial counsel's concession on the Taco Bell robbery conduct using the Strickland Ineffective Assistance of Counsel standard. First, McCoy is not implicated in this case because Mr. Thompson's counsel argued for acquittal. In the McCoy case, the trial attorney conceded guilt at the outset and stated that his client was guilty of murder. He might have argued that he was guilty of some lesser type of murder, but in any event, trial counsel conceded guilt. Here, Mr. Thompson's attorney on his behalf did not concede guilt, but in fact argued to the contrary, which was the whole basis of the ineffective assistance of counsel claim, that Mr. Thompson was not guilty because the government could not prevail on the interstate commerce element. For that reason, Mr. Thompson's facts do not fit within McCoy and McCoy is simply not implicated. You think that if, let's assume that McCoy is implicated contrary to your argument for purposes of this question. If a defendant tells his lawyer now post-McCoy, I don't want you to concede that I was at the scene of the crime because I wasn't there. I don't want you to concede that I had a gun because I didn't have a gun. I don't want you to concede that I conspired because I didn't conspire. And the lawyer says, I'm going to concede all those things because I have another argument on which I'm going to argue for acquittal. Is there a violation of McCoy? I think post-McCoy that would be improper. Although another panel involving Judge Grant in May of this year found that McCoy is potentially not even applicable outside of the death penalty murder scenario, yes, I agree that as the court has laid out in its hypothetical, that would be a McCoy violation. But that is not what happened here. And in fact, Your Honor asked my counterpart, one of the first questions was, well, what did Mr. Thompson allege in his 2255 pleading to bring about a hearing? What sufficient facts did he allege to raise this McCoy claim at the district court level? And the answer is, he did not raise any facts. In fact, in the— I thought he had said at the very least that that was contrary to his wishes. He didn't say that? No, he did say at least that. But in the 250-some-odd page brief that he wrote, he spent the vast majority of time on this issue that his trial counsel had misconstrued or misunderstood the interstate commerce element and that this was sort of a misguided defense and it was a poor strategic choice on the part of his counsel. But at no point did he give the answer to Your Honor's question about what had happened prior to trial, prior to counsel's opening statement, the interaction between himself and trial counsel, where he actually told trial counsel, no, don't do that. At best, the only allegation that he made below in the district court was a parenthetical in his handwritten initial pleading that counsel had made the strategic choice, in parentheses, against my wishes. But Mr. Thompson never— But doesn't that tell you a fair amount? If it's against his wishes, isn't there a fair inference that those wishes were communicated to counsel at some point? I think it is an inference that the court could draw. Aren't you required to draw it unless you hold an evidentiary hearing and assess credibility? I think Mr. Thompson did not state that he had ever communicated those wishes to anyone, his trial counsel or to the district court. In fact, my reading of the language— Who would he communicate those wishes to? To his trial counsel or to the district court. My reading of the 2255 petition and the way that he explained this strategy was that counsel had come up with this strategy and, in essence, convinced him that it would work and that he went along with the strategy, although he had previously insisted that he was innocent of all the robberies. It is my understanding that Mr. Thompson, after the fact, learned that perhaps the interstate commerce element wouldn't save him and, of course, elaborated at great length, after this court issued its certificate of appealability, that he lambasted counsel for making this argument. He asked counsel not to make this argument, but none of those facts were present below at the 2255 stage. And had Mr. McCoy—I'm sorry—had Mr. Thompson raised those McCoy facts, those sufficient facts below, perhaps he would have been entitled to a hearing. But it is Mr. Thompson's burden below at the 2255 level to raise sufficient facts to warrant a hearing, and that just didn't happen here. The district court, and more specifically the magistrate judge before the district court adopted the report and recommendation, made a fair number of assumptions about why certain actions constituted trial strategy without holding an evidentiary hearing. Is that generally appropriate? Did you present the affidavit of the lawyer, of the defense lawyer? No. No, the government did not. How's a magistrate judge supposed to figure out whether or not there was a strategic decision made and, if so, the reason for it? With respect to the McCoy claim or the ineffective assistance of counsel argument with respect to the concession of the Taco Bell robbery, Mr. Thompson himself alleged that this was a strategic choice, and he alleged the fact in his petition that this was a strategy. And as your Honor knows, strategic choices about how best to achieve a client's objectives which fall to counsel is a proper basis for the court to deny the infective assistance of counsel claim. Mr. Thompson himself said that this concession was a strategy, and in fact he used the term strategy or tactic on numerous occasions within the more than 10 pages that he spent briefing this issue in his petition. This admission just referred to one robbery. How many robberies were they tried for? They were tried for eight robberies. One Taco Bell robbery, which was a commercial robbery, and seven bank robberies. This only applies to the Taco Bell robbery? That's correct. Mr. Thompson's trial counsel, in his opening statement and later throughout trial and in closing argument, conceded that Mr. Thompson had committed the offense conduct related only to the Taco Bell robbery. And as the district court pointed out, as the magistrate pointed out in the report and recommendation that was ultimately adopted, that robbery was obvious. There was overwhelming evidence of it, and the language that the magistrate judge used that was ultimately adopted was that the evidence as to that count was overwhelming and that there was a clear photograph, which was government's exhibit one, rather government's exhibit two. Government's exhibit one was a videotape, and in that videotape and in the still photographs that were captured of Mr. Thompson, his face was clearly depicted. So regardless of whether Mr. Thompson's counsel had admitted that his client committed the offense conduct, he very likely would have been convicted of this charge, especially in light of all of the other evidence that the government had aside from counsel's concession and the surveillance video and the still photographs of Mr. Thompson. What's your position on whether McCoy is a new rule or merely an extension of the FREDA line of precedence? McCoy is a new rule, and we know that it's a new rule because as this court held in Spasiano v. Singletary in 1994, even if the result that the habeas petitioner seeks is within the logical compass of a prior Supreme Court decision, even if prior Supreme Court decisions inform or even control or govern the analysis of the claim, it is still a new rule claim unless the rule is actually dictated by preexisting precedent. We know that it's not dictated by preexisting precedent because in McCoy itself, the Supreme Court analyzed the conflict in the courts of last resort, the difference between how the Louisiana Supreme Court had viewed this issue versus how the Delaware, Colorado, and Kansas courts had viewed this issue. And there was a split in the courts of last resort about how this issue should be decided. And also Justice Alito pointed out in his dissent several times that this was a newly appealed from the denial of, or applications for a second or successive habeas petitions has said that this is a newly discovered rule that has not been made retroactively applicable by the Supreme Court. How is this different in that regard with, when you compare it to, I forget the name of it now, the Supreme Court case, which held that it is generally an effective assistance to not advise a defendant of the immigration consequence of a plea, which we've held and other courts have held is just an extension of Strickland and not a new substantive rule that triggers a new one year statute of limitations to seek a second or successive application. How is this different? Because the McCoy court and Justice Ginsburg for the majority made very clear that this is not an ineffective assistance of counsel claim and distinguished a McCoy claim based on the defendant's autonomy from an ineffective assistance of counsel claim under Strickland and stated that because the McCoy issue was a structural error, the court may not even consider the ineffective assistance of counsel issue. So the McCoy court itself contrasted the type of Sixth Amendment violation of the defendant's secured autonomy from an ineffective assistance of counsel claim. But the court, I really, that part of your argument I don't understand because McCoy engages in a Sixth Amendment analysis. It says that Strickland on the prejudice side doesn't control because it concludes that this sort of error is structural and I take it that's your strongest argument from my perspective on why it's a new rule. But to say that this is not a Sixth Amendment case when the court begins its analysis with these words, the Sixth Amendment guarantees to each criminal defendant the assistance of counsel for his defense and then goes forward. It's a Sixth Amendment case, right? Yes, of course it's a Sixth Amendment case and the court does analyze the Sixth Amendment but in a different way than an ineffective assistance of counsel claim because the court talks about the difference between, the court specifically says and distinguishes strategic choices about how best to achieve a client's objectives which fall to counsel and choices about the client's objectives which are in fact the client's choices. And so this, the whole analysis is about the defendant's autonomy to choose his defense rather than counsel's competence. We're not talking about whether or not counsel is competent or incompetent or effective or ineffective. We're talking about the defendant's right to select the defense of his choosing. And so that is how this is different. This is the case not about whether or not Mr. Thompson's trial counsel was effective or competent but rather whether or not he overcame Mr. Thompson's objective. And in this case he did not overcome Mr. Thompson's objective because Mr. Thompson's objective was to seek an acquittal and Mr. Thompson's counsel sought an acquittal. And perhaps that, the interstate commerce argument was not the best argument in the perhaps the only argument that he really could have made in the face of overwhelming evidence of guilt as to this robbery. Do you want to talk a little bit about the severance issue? Yes, your honor. I'd be glad to talk about the severance issue. I think that the most salient point to make about the severance issue, as my counterpart said, that it's speculative. He used the term speculative. Well, where an effective and error is uncertain or indeterminate where we would have to speculate, the defendant has not met his burden of showing a reasonable probability that the result would have been different but for the alleged error. That was this court's holding in Rodriguez, the 2005 case. And that's exactly what we have here. As to the prejudice prong of this analysis, it's speculative whether or not the government could have produced Mr. Robinson at a severed trial. We could have pled him guilty and then asked for him to testify. He could have testified consistent with the way that he testified at the trial of the joint case. In response to opposing counsel's statement that he's never seen that happen, is that a strategy that the government actually uses? Yes, it is a strategy that the government uses. If a defendant cooperates. Yes, if a defendant cooperates. If he chose to go to trial, as he did this time around, and gets convicted, you're not calling him. Again, I think it's speculative. You have no way of knowing whether that testimony is going to go south or not. Again, Your Honor, I agree that we would not know unless he cooperated. However, it's speculative. And based on a speculative analysis of whether or not the outcome would have been different, we cannot grant an ineffective assistance of counsel claim based on this failure to move for severance that maybe would not have been warranted in the first place. And even if Robinson had not testified at a severed trial, the government could have introduced other evidence that perhaps would not have been admissible at the joint trial. Statements that Mr. Thompson made that might have been in violation of Bruton with a joint trial. So the government could have produced other evidence. And I see that my time is up, but I'll just briefly conclude. The government could have produced other evidence that might not have been produced at the joint trial. And it was a reasonable strategy or a reasonable decision that trial counsel made to keep the parties together so that he could compare the weight of the evidence against Mr. Robinson to the mostly circumstantial case on the bank robberies against Mr. Thompson. All right. Thank you very much, Ms. Butcher. I have to say I'm amazed, Your Honors, that the government would criticize us for speculating about what might have happened at a hypothetical other trial without these errors and then ask the court to speculate as to other unidentified, unspecified evidence that might have come in at some other trial. In Sears v. Upton, the United States Supreme Court discussed the fact that the Strickland Inquiry is necessarily speculative and it requires the court to engage in an analysis of what might have happened at some other trial without the errors. But our position is that the speculation in which we engage on behalf of Mr. Thompson is rooted in facts in the record and logical inferences from those facts and things that actually happened at trial. If the jury instructions had been to your liking, to Mr. Thompson's liking, given the circumstances, there wouldn't have been any need to sever, right? I disagree, Your Honor. I think that that would have been, one of the errors would have been cured, but I think that the prejudice from that impeachment evidence coming in the way it did still would have justified a severance. So, we don't think that would necessarily cure the problem here. I want to address a few things. The government is taking the position, apparently, that Mr. Thompson's counsel did not admit his guilt and that he sought an acquittal. But I want to direct Your Honor's attention to what the government, what the assistant United States attorney said to Mr. Thompson's jury at trial, that both defendants admitted to that, to robbing that Taco Bell. And what the government told this court on direct appeal, that the defendants admitted to robbing the Taco Bell. I don't think it's appropriate for the government to now be saying, no, that's not what happened. In addition... Mr. Robinson admitted it to it some way at trial? That's correct, Your Honor. Okay. I don't think, I think the, I think what the court ought to look at is, how did the government interpret what happened at the time? How did the government interpret what happened when they wrote about it on direct appeal? What did Mr. Thompson's lawyer tell him he intended to do, and that is concede guilt? If you look at the facts in the record, I think that's exactly what happened and the only logical reading of what happened. If we found ineffective assistance of counsel on the Taco Bell count, would we grant a writ on the whole case or just on that particular count? On the whole case, Your Honor, we think that that fundamental error was structural error that requires reversal of the entire case. Can I ask you a question in that regard to piggyback on Judge Seiler's question? Was there a gun count that was tagged to the Taco Bell robbery or not? There was, Your Honor. Okay. And we believe... At the very least, you would argue that if that count, the Taco Bell count goes, the gun count with it has to go too. That's correct, Your Honor, and that, if you recall, is a seven-year mandatory minimum consecutive to any underlying sentence on the Taco Bell robbery count. But importantly... It's also hugely significant in another way because if that gun count doesn't stand at the end after a retrial, then the first 300-month consecutive for the other gun count goes down to seven and you eliminate the other 300 months. That's correct, Your Honor. There were 57 years... So instead of going to seven, 300, 300, you go seven, 300. That's correct, Your Honor. And I want to direct Your Honor to the case law that indicates that where the record is can consider the error more prejudicial. That's okay. We can find those cases because we're a little bit over your time and we've got to move on to the third case. Mr. Chaykin, thank you very much, you and the firm, for taking on this case. I know that your client appreciates it and so do we. Thank you very much. Thank you to the court for the opportunity for our firm to handle this matter. Thank you. Thank you. Take your time.